CCC:MEM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

F I L E D
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

☆    JAN 3 1 2018    ★

LONG ISLAND OFFICE

- - - - - - - - - - - - - - - - - - X

IN THE MATTER OF AN APPLICATION
FOR A SEARCH WARRANT FOR:

AFFIDAVIT IN
SUPPORT OF A
SEARCH WARRANT

THE PREMISES KNOWN AND DESCRIBED AS
A WHITE LG CELLULAR TELEPHONE
BEARING SERIAL NUMBER: 709CYPY2492136
 (THE "SUBJECT TELEPHONE").

(Fed. R. Crim. P. 41)

- - - - - - - - - - - - - - - - - - - - -  MJ - 18      88

EASTERN DISTRICT OF NEW YORK, SS:

RAUL MERCADO, being duly sworn, deposes and states that he is a Task

Force Officer ("TFO") assigned to the Department of Homeland Security, Homeland

Security Investigations ("HSI"), duly appointed according to law and acting as such.  Upon

information and belief, there is probable cause to believe that there is located in the

PREMISES KNOWN AND DESCRIBED AS A WHITE LG CELLULAR TELEPHONE

BEARING SERIAL NUMBER: 709CYPY2492136 (THE "SUBJECT TELEPHONE"),

further described in Attachment A, the things described in Attachment B, which constitute

evidence, fruits and instrumentalities of a conspiracy to distribute and possess with intent to

distribute cocaine base and use of firearms in connection with a drug trafficking crime, in

violation of Title 21, United States Code, Sections 841(b)(1)(A)(iii) and 846, and Title 18,

United States Code, Section 924(c)(1)(A)(i), respectively.

 

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I have been a TFO with HSI for approximately two years.  Prior to that assignment, I was assigned for approximately 17 years to the Suffolk County Police Department ("SCPD") as a detective in the narcotics section.  During my tenure with HSI and SCPD, I have investigated various federal criminal violations including narcotics trafficking.  During the course of those investigations, I have conducted physical surveillance, monitored undercover operations, debriefed cooperating witnesses and confidential informants, monitored wiretaps, conducted controlled narcotics purchase and interviewed civilian witnesses.  The information set forth below is based upon my experience and training as a Special Agent, my review of documents and other evidentiary items, debriefing of cooperating witnesses, and my discussions with other law enforcement agents.  Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only.  Based on my experience, and in light of the information I have learned during this investigation, I believe there is probable cause that the SUBJECT TELEPHONE was used to communicate with others concerning a narcotics conspiracy and illegal possession of firearms, and to receive and store electronic information relating to the names, nicknames, telephone numbers and pager numbers of criminal accomplices.  It has been my experience that narcotics traffickers and gang members often communicate by

---

[1]      Because this affidavit is submitted for the limited purpose of establishing probable cause for a search warrant, I have not set forth each and every fact learned during the course of the investigation.

telephone, pager and other electronic devices with their co-conspirators to plan and execute their criminal schemes.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

2.      HSI and the SCPD have been conducting an investigation into the distribution of crack cocaine, heroin and other controlled substances by the Bloods street gang in Mastic Beach, Suffolk County, New York. During the course of its investigation of this matter, HSI and the SCPD received information that JASON MARTIN ("MARTIN"), also known as "J-Rock," is a member of the Bloods street gang that is distributing controlled substances.   Moreover, the investigation has revealed that MARTIN was residing at 139 Mill Drive, Mastic Beach, New York 11951 ("MARTIN's Residence").

3.      On November 7, 2017, a grand jury sitting in the Eastern District of New York returned a two-count indictment (the "Indictment") charging that between January 2015 and February 2017, MARTIN conspired to distribute and possess with intent to distribute cocaine base and used firearms in connection with that drug trafficking crime (the "Target Offenses"). (Attached as Exhibit #1).  On November 7, 2017, based on the Indictment, United States Magistrate Judge Anne Y. Shields signed a warrant authorizing the arrest of MARTIN.  (Attached as Exhibit #2).

4.      On November 8, 2017, HSI agents and SCPD officers arrived at MARTIN'S Residence at approximately 6 a.m.  Law enforcement officers approached all entrances and exits to MARTIN's Residence, while additional law enforcement knocked on the front door.  An individual who was later identified as MARTIN's wife ("MARTIN's Wife") answered the front door.  At the same time, law enforcement officers observed

MARTIN attempt to exit MARTIN's Residence through a rear basement door. Upon seeing the law enforcement officers, MARTIN ran back inside MARTIN's Residence. Before MARTIN could be apprehended, a SCPD officer heard a toilet flush in the area that MARTIN had retreated to inside the residence. MARTIN was apprehended by law enforcement inside of MARTIN's Residence.

    5.  Simultaneously to MARTIN's apprehension, law enforcement conducted a protective sweep of MARTIN's Residence. During the sweep, law enforcement observed the SUBJECT TELEPHONE on a nightstand in the bedroom. MARTIN stated that the SUBJECT TELEPHONE did not belong to him. During the sweep, MARTIN's Wife stated, in sum and substance, that there was a firearm located inside a "trap" in the headboard of the bed.[2] Law enforcement officers accompanied MARTIN'S Wife to the bedroom where MARTIN's Wife directed officers to a green and black Kel-Tec KSG tactical shotgun (the "Shotgun"). The Shotgun was stored inside of a "trap" compartment, in the headboard of the bed that MARTIN's Wife stated she shared with MARTIN.[3] While inside the bedroom, MARTIN's WIFE identified the SUBJECT TELEPHONE as MARTIN's. The SUBJECT TELEPHONE was again shown to MARTIN, who, again, denied being the owner of the phone. Finally, the SUBJECT TELEPHONE was once again shown to MARTIN's Wife,

---

  [2]  A "trap" is a hidden enclosure designed to hide illegal items such as weapons, narcotics, narcotics proceeds, or contraband from law enforcement.

  [3]  The Shotgun was initially returned to MARTIN's Wife after she claimed it belonged to her. Later on in the afternoon, pursuant to a grand jury subpoena, MARTIN's Wife surrendered the Shotgun to the SCPD.

who stated the SUBJECT TELEPHONE belonged to MARTIN.  The SUBJECT

TELEPHONE was taken by law enforcement.[4]

      6.     Based on my training, experience and discussions with other law

enforcement officers, I understand that individuals involved in conspiracies to distribute and

possess with intent to distribute narcotics and who use firearms in connection with drug

trafficking crimes, often do not act alone and often communicate with co-conspirators by

means of cellular telephones such as the SUBJECT TELEPHONE.  Such persons commonly

maintain records that reflect names, addresses, or telephone numbers of their associates in

their cellular telephones.  They also commonly maintain records of communications such as

call logs, chats and text messages in their cellular telephones.  They commonly take

photographs of themselves, their associates, or their property using their cellular telephones.

These individuals usually maintain these records of communication and photographs in their

possession and in their cellular telephones.

      7.     Furthermore, based upon my training and experience, members of street

gangs, including the Bloods, often communicate with one another via cellular telephone and

discuss gang business and criminal activity.  In addition to using the cellular telephone to

---

    [4]    Further, the United States Attorney's Office has advised me that "under the
'security check' exception, when law enforcement officers have lawfully entered premises in
connection with an arrest, and in the course of making a permissible quick and limited
protective sweep of the premises they see an object whose incriminating character is
immediately apparent, and if officers have a lawful right of access to the object, they may
seize it without a warrant.  The plain-view doctrine may allow discovered items to be
admitted in evidence even where the discovery of the evidence was not inadvertent." See
United States v. Delva, 858 F.3d 135, 149 (2nd Cir. 2017) (holding that law enforcement
agents' seizure of the defendant's cellular phone, which was in plain view during a protective
sweep, did not violate the Fourth Amendment; citing, Horton v. California, 496 U.S. 128
(1990) (internal quotations omitted)

communicate with other gang members and discuss criminal activity, gang members also use their cellular telephones to take pictures of themselves wearing gang paraphernalia and flashing gang signals, which constitutes the existence of and individuals membership in the gang.

## TECHNICAL TERMS

8.      As used herein, the following terms have the following meanings:

9.      Wireless telephone (or mobile or cellular telephone): A handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving and storing text messages and email; taking, sending, receiving and storing still photographs and video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device, and a wide variety of applications, also known as "apps," which may store the user's preferences and other data. Such apps may include Facebook, Twitter, and other social media services.

6

10.     Based on my research, I understand that the SUBJECT TELEPHONE provides not only phone and text message services, but can also be used to send and receive emails; access the Internet; track GPS data; take, store and share photographs and videos; and use a wide variety of apps.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the SUBJECT TELEPHONE.

TECHNICAL BACKGROUND

11.     As further described in Attachment B, this application seeks permission to locate not only data that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the SUBJECT TELEPHONE were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence can be recovered from the SUBJECT TELEPHONE because:

a.     Data on an electronic device can provide evidence of a file that was once on the device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the device that show what tasks and processes were recently active.  Web browsers, email programs, and instant messaging/"chat" programs store configuration information on the device that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other

7

external storage media, and the times the device was in use. Electronic devices can record information about the dates files were created and the sequence in which they were created.

       b.     Forensic evidence on an electronic device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, instant messaging or chat logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the electronic device at a relevant time.

       c.     A person with appropriate familiarity with how an electronic device works can, after examining this forensic evidence in its proper context, draw conclusions about how devices were used, the purpose of their use, who used them, and when.

       d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on an electronic device that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, such evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how the device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding user attribution evidence, sometimes it is necessary to establish that a particular thing is not present on an electronic device. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

12.      Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for would permit the examination of the SUBJECT TELEPHONE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

13.      The SCPD and HSI seized the SUBJECT TELEPHONE on or about November 8, 2017. Since its seizure, the SUBJECT TELEPHONE has exclusively been in the custody of the SCPD and HSI. Because this application seeks only permission to examine the SUBJECT TELEPHONE, which is already in law enforcement's possession, the execution of the warrant does not involve intrusion into a physical location. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

14.      Based on the foregoing, there is probable cause to believe that there is located in the SUBJECT TELEPHONE, further described in Attachment A, the things described in Attachment B, which constitute evidence, fruits and instrumentalities of a conspiracy to distribute and possess with intent to distribute cocaine base and use of firearms

9

in connection with a drug trafficking crime, in violation of Title 21, United States Code, Sections 841(b)(1)(A)(iii) and 846, and Title 18, United States Code, Section 924(c)(1)(A)(i), respectively.  Accordingly, the Court should issue the requested warrant.

          15.     WHEREFORE, your deponent respectfully requests that a search warrant be issued for the PREMISES KNOWN AND DESCRIBED AS A WHITE LG CELLULAR TELEPHONE BEARING SERIAL NUMBER: 709CYPY2492136.

Dated: Central Islip, New York
       January 3 / , 2018

                                 RAUL MERCADO
                                 Task Force Officer
                                 HSI

Sworn to before me this
3 day of January, 2018

       /s/ STEVEN I. LOCKE

THE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

10

**EXHIBIT 1**

CCC:MEM
F. #2017R01934

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – –X

UNITED STATES OF AMERICA

- against -

JASON MARTIN,
     also known as "J-Rock,"

          Defendant.

– – – – – – – – – – – –X

**I N D I C T M E N T**

CR – 17 0618
(T. 18, U.S.C., §§ 924(c)(1)(A)(i), 2 and
3551 et seq.; T. 21, U.S.C.,
§§ 841(b)(1)(A)(iii) and 846)

AZRACK, J.

BROWN, M. J.

THE GRAND JURY CHARGES:

<u>COUNT ONE</u>
(Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base)

       1.     In or about and between January 2015 and February 2017, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant JASON MARTIN, also known as "J-Rock," together with others, did knowingly

and intentionally conspire to distribute and possess with intent to distribute a controlled

substance, which offense involved a substance containing cocaine base, a Schedule II

controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).   The

amount of cocaine base involved in the conspiracy attributable to the defendant as a result of

2

his own conduct, and the conduct of other coconspirators reasonably foreseeable to him, was 280 grams or more.

(Title 21, United States Code, Sections 846 and 841(b)(1)(A)(iii); Title 18, United States Code, Sections 3551 et seq.)

COUNT TWO
(Use of Firearms In Connection with a Drug Trafficking Crime)

2.      In or about and between January 2015 and February 2017, both dates being approximate and inclusive, within the Eastern District of New York, the defendant JASON MARTIN, also known as "J-Rock," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a drug trafficking crime, to wit: the crime charged in Count One, and did knowingly and intentionally possess said firearms in furtherance of such drug trafficking crime.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 2 and 3551 et seq.)

A TRUE BILL

_____
FOREPERSON

BRIDGET M. ROHDE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

## JASON MARTIN,
### also known as "J-Rock,"

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 924(c)(1)(A)(i), 2 and 3551 et seq.;
T. 21, U.S.C.,§§ 841(b)(1)(A)(iii) and 846)

*A true bill.*

_____ _____
*Foreperson*

*Filed in open court this* _____*day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

***AUSA Mark E. Misorek, 631-715-7874***

**EXHIBIT 2**

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| JASON MARTIN, | ) | |
| also known as "J-Rock," | ) | **CR-17 0618** |
| | ) | |
| | ) | |
| _Defendant_ | ) | |

**AZRACK, J.**

## ARREST WARRANT

**BROWN, M. J.**

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

_(name of person to be arrested)_    JASON MARTIN, also known as "J-Rock" ,

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment        ☐ Superseding Indictment        ☐ Information        ☐ Superseding Information        ☐ Complaint
☐ Probation Violation Petition        ☐ Supervised Release Violation Petition        ☐ Violation Notice        ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(iii); Title 18, United States Code, Sections 3551 et seq. and Use of Firearms in Connection with a Drug Trafficking Crime in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), 2 and 3551 et seq.

Date:    11/07/2017

_____
_Issuing officer's signature_

City and state:    Central Islip, New York

The Honorable Anne Y. Shields
_____
_Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _____ , and the person was arrested on _(date)_ _____ at _(city and state)_ _____ . |
| Date: _____        _____ <br> _Arresting officer's signature_ <br><br> _____ <br> _Printed name and title_ |

## ATTACHMENT A

### Property To Be Searched

The property to be searched is a WHITE LG CELLULAR TELEPHONE
BEARING SERIAL NUMBER: 709CYPY2492136 (THE "SUBJECT TELEPHONE")
seized on or about November 8, 2017 from a bedroom at 139 Mill Drive, Mastic Beach, New
York 11951.  The warrant authorizes the forensic examination of the SUBJECT
TELEPHONE for the purpose of identifying the electronically stored information described
in Attachment B.

## ATTACHMENT B

### Particular Things To Be Seized

All information obtained from the SUBJECT TELEPHONE will be maintained by the government for the purpose of authentication and any potential discovery obligations in any related prosecution. The information shall be reviewed by the government only for the purpose of identifying and seizing all information described below that constitutes evidence, fruits, or instrumentalities of a conspiracy to distribute and possess with intent to distribute cocaine base and use of firearms in connection with a drug trafficking crime, in violation of Title 21, United States Code, Sections 841(b)(1)(A)(iii) and 846, and Title 18, United States Code, Section 924(c)(1)(A)(i) and, respectively, including:

1.      All records and information on the SUBJECT TELEPHONE described in Attachment A, including (a) names and telephone numbers, as well as the contents of all call logs, contact lists, and (b) for the time period January 2015 through November 2017, text messages, emails (including those sent, received, deleted and drafted), instant messages, photographs, videos, social media account activity (including postings and messages), Internet activity (including browser history, web page logs, and search terms entered by the user), and other electronic media constituting evidence, fruits, or instrumentalities of the violations described above.

2.      Evidence of user attribution showing who used or owned the SUBJECT TELEPHONE at the time the things described in this warrant were created, edited, or deleted, such as, for example, logs, phonebooks, saved usernames and passwords, documents, and browsing history;

12

3.     Evidence of software that would allow others to control the SUBJECT TELEPHONE, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

4.     Evidence of the lack of such malicious software;

5.     Evidence of the attachment to the SUBJECT TELEPHONE of other storage devices or similar containers for electronic evidence;

6.     Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the SUBJECT TELEPHONE;

7.     Evidence of the times the SUBJECT TELEPHONE were used;

8.     Passwords, encryption keys, and other access devices that may be necessary to access the SUBJECT TELEPHONE; and

9.     Contextual information necessary to understand the evidence described in this attachment, all of which constitute evidence, fruits and instrumentalities of the violations described above.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.